PITTMAN, Judge.
E.G. (“the stepfather”) has appealed from a judgment of the Russell Juvenile Court purporting to award custody of M.A.G. (“the child”) to M.P. (“the biological father”).
A brief overview of the pertinent facts is sufficient. The child was born on September 30, 1998, to T.G. (“the mother”), an unmarried woman, who married the stepfather six days after the birth of the child. The record reflects that the stepfather’s name is listed on the child’s birth certificate as the child’s father. The mother and the stepfather had two additional children who are not at issue in this case: E.L.G., who was born in December 1999, and A.G., who was born in December 2000. All three children were held out as siblings and were reared together by the mother and the stepfather until the mother was killed in a motor-vehicle accident in July 2008.
In October 2008, Jo Anna C. Parker was appointed to be the child’s guardian ad litem.[1] One year later, Parker, acting on the child’s behalf, filed a petition to establish paternity as to the child. In December 2009, the juvenile court conducted an ore tenus proceeding to consider the child’s paternity; at that proceeding, over the stepfather’s objection, the juvenile court admitted genetic-testing results indicating that the biological father was the child’s father. On December 8, 2009, the juvenile court entered an order adjudicating the biological father’s paternity of the child and awarding the biological father alternating weekend and after-school Wednesday visitation with the child. Although custody of the child remained with the stepfather, the local Department of Human Resources (“DHR”) was instructed to *221 conduct home evaluations on the stepfather’s and the biological father’s residences. The home evaluations revealed no identifiable problems with either the stepfather’s or the biological father’s home.
In February 2010, the biological father filed a new petition in the juvenile court seeking full physical and legal custody of the child. The juvenile court conducted another ore tenus proceeding in March 2010, during which the stepfather, the biological father, the biological father’s mother, the stepfather’s sister-in-law, the stepfather’s sister, and a neighbor of the stepfather testified. At the beginning of the hearing, the juvenile court stated in answer to the stepfather’s attorney’s question regarding the standard to be applied in the case that it would consider the “best interests” of the child. At the conclusion of the proceeding, the guardian ad litem recommended that the juvenile court award the child’s custody to the biological father. The juvenile court entered a judgment in March 2010 in which it purported to award physical custody of the child to the biological father and to award the stepfather liberal visitation, including two nights each week and alternating weekends. The stepfather filed a timely appeal and asserts that the juvenile court erroneously awarded custody of the child to the biological father.[2] Rather than addressing the merits, we are required to dismiss this appeal because the juvenile court’s judgment is void for lack of subject-matter jurisdiction.
“[A] lack of subject-matter jurisdiction is not subject to waiver by the parties, and it is our duty to consider a lack of subject-matter jurisdiction ex mero motu.” Ex parte T.C., 63 So.3d 627, 630 (Ala.Civ.App.2010). In Ex parte T.C., we explained the effect of the enactment of the Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala.Code 1975, on a juvenile court’s exercise of retained jurisdiction over child-custody determinations when a child has not been found to be dependent, delinquent, or in need of supervision. We noted that
“under former law, ‘[w]hen a juvenile court ha[d] jurisdiction to make an initial child-custody determination, it re-tainted] jurisdiction over a petition to modify that custody judgment to the exclusion of any other state court until the child reache[d] 21 years of age or the juvenile court terminate[d] its jurisdiction.’ [W.B.G.M. v. P.S.T., 999 So.2d 971,] 974 [ (Ala.Civ.App.2008) ].”
Ex parte T.C., 63 So.3d at 630 (citing former §§ 12-15-32(a) and 26-17-10(e),[3] *222 Ala.Code 1975). However, the statutory provisions of the AJJA, applicable to cases filed after January 1, 2009, limit a juvenile court’s retained jurisdiction to cases in which “a child has been adjudicated dependent, delinquent, or in need of supervision.” Ala.Code 1975, § 12-15-117(a). In conclusion, we stated:
“The clear intent of the Legislature was to provide that the juvenile courts of this state should no longer be deciding custody disputes except insofar as then-resolution is directly incidental to core juvenile-court jurisdiction (such as in original paternity actions, see Ala.Code 1975, § 26-17-104).”
T.C., 63 So.3d at 630-31 (first emphasis in original; second emphasis added); see also K.C. v. R.L.P., 67 So.3d 94 (Ala.Civ.App. 2011).
In the instant case, because the juvenile court had already entered a final adjudication of the child’s paternity and had awarded visitation rights to the biological father in the December 2009 judgment, thereby implicitly awarding primary physical and legal custody to the stepfather (see, e.g., M.R.J. v. D.R.B., 17 So.3d 683 (Ala.Civ.App.2009), and T.B. v. C.D.L., 910 So.2d 794 (Ala.Civ.App.2005)), the juvenile court could not properly hear the biological father’s custody-modification claim. See T.C. and K.C., supra. Because nothing in the record suggests that dependency was an issue below, and because the biological father’s custody request was filed after January 1, 2009, it could only have been properly filed in the circuit court. The juvenile court is directed to vacate its March 2010 judgment and to dismiss the biological father’s custody-modification action.
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. The record does not contain any material relating to the substance of any juvenile-court proceedings giving rise to that appointment.

. The stepfather's appointed attorney filed a "no-merit” brief and a motion to withdraw pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and J.K. v. Lee County Department of Human Resources, 668 So.2d 813 (Ala.Civ.App.1995); although that motion and brief were served upon the stepfather, he did not offer any points or issues to be considered in connection with the appeal. However, in this court's initial review, we determined that certain objections and arguments had been raised by the stepfather during trial regarding his custodial rights as a presumptive father, thereby potentially challenging the juvenile court's paternity judgment. By order, we instructed the stepfather’s attorney to address the potential application of Ex parte Presse, 554 So.2d 406 (Ala. 1989), and subsequent caselaw, to the facts in this case; a minimal supplemental brief was then filed. After a more thorough review of the record, we have determined that, to the extent that this appeal challenges the juvenile court’s judgment adjudicating the paternity of the child, no timely appeal has been taken. The only timely appeal was taken from the juvenile court's custody judgment.

. Former § 12-15-32 was repealed effective January 1, 2009, the date the AJJA, § 12 — 15— 101 et seq., Ala.Code 1975, became effective. See Act No. 2008-277, Ala. Acts 2008. Former § 26-17-10 also was repealed effective *222 January 1, 2009. See Act No. 2008-376, Ala. Act 2008.